IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY L. MIXON, : | |
| (AIS #160426) | |
| : | |
| Plaintiff, | |
| : | |
| vs. | CIVIL ACTION 11-00367-WS-C |
| : | |
| CORIZON, INC., f/k/a CORRECTIONAL | |
| MEDICAL SERVICES, INC., et al., : | |
| | |
| Defendants. : | |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motions for summary judgment of Defendants, Corizon, Inc., f/k/a Correctional Medical Services, Inc. ("CMS"), Dr. Pamela Barber, Nurse Sylvia Hicks, Corizon Health Services Administrator Donny Myers, Alabama Department of Corrections ("ADOC") Commissioner Kim T. Thomas,[1] ADOC Associate Commissioner of Health Services Ruth Naglich, Warden Tony Patterson, and Correctional Captain James Powers (Docs. 13, 20, 21, 22, 27); and Plaintiff's opposition thereto. (Doc. 23). For the reasons stated below, it is recommended that the motions for summary judgment of Defendants Corizon, Barber, Hicks, Myers, Thomas, Naglich, Patterson, and Powers[2]

---

[1] Kim T. Thomas became the Commissioner of the Alabama Department of Corrections on January 17, 2011. Therefore, Commissioner Thomas has been substituted for former Commissioner Michael Haley, originally named as a Defendant in this action.

[2] Plaintiff lists Correctional Captain James Powers as a Defendant in the style of his second amended complaint. However, he makes no allegations whatsoever against this Defendant in the

1

be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.  In addition, it is recommended that Plaintiff's pending motion for a temporary restraining order or preliminary injunction be denied as moot.  (Doc. 4).

## I.  SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.  On May 9, 2011, while incarcerated at Holman Correctional Facility ("Holman"), Plaintiff filled out a health services request form asking to see the doctor about a hernia.  (Doc. 20, att. 2 at 50-51).  On that same day, Plaintiff was seen in sick call by a nurse in the health care unit and scheduled to see the doctor on May 20, 2011.  (Id. at 51-52).  Prior to his doctor's appointment, on May 13, 2011, Plaintiff was given a hernia guard to wear.  (Doc. 20, att. 7 at 67).  On May 20, 2011, Plaintiff was seen by a prison physician, Defendant Dr. Barber, and diagnosed with a small, reducible inguinal hernia that had been present for three weeks.  (Doc. 20, att. 2 at 19; Doc. 20, att. 8 at 2).  Dr. Barber recommended a conservative treatment plan with analgesics and a truss.  (Doc. 20, att. 8 at 2).  Thereafter, Dr. Barber closely monitored Plaintiff for signs of non-reducibility, strangulation, or dissection into the scrotum.  (Id.; Doc. 20, att. 1 at 2).  Plaintiff was told at his first appointment that surgery would not be an option unless the hernia became non-reducible or obstructed his colon.  (Doc. 20, att. 2 at 19).

On May 23, 2011, and July 18, 2011, Plaintiff filed medical grievances with Defendant

---

body of the complaint.  (Doc. 8).  Therefore, in addition to the reasons set forth herein, Defendant Powers is due to be dismissed from this action for Plaintiff's failure to state a prima facie case against him.  See Martinez v. Minnis, 257 Fed. Appx. 261, 266-67 (11th Cir. 2007) (unpublished) (where plaintiff's "complaint made *no* allegations whatsoever against [defendants], the district court correctly dismissed them from the case.") (emphasis in original); Bailey v. Hughes, 2011 WL 4542721, *22 (M.D. Ala. 2011) ("Where a plaintiff sues a defendant and makes no allegations against that defendant, there is no prima facie case.").

Corizon complaining that he needed surgery for his hernia because of the pain that he was experiencing. Plaintiff stated in his grievance that Dr. Barber told him that he could not have surgery "unless [he] was dying." (Doc. 8 at 7, 13). Defendant Hicks, who is a nurse at Holman employed by Corizon, responded to Plaintiff's grievances and confirmed that he probably would not be a candidate for surgery unless his hernia was life-threatening and that any surgery would have to be approved by the doctors at Corizon. (Id.). Nurse Hicks instructed Plaintiff that if his pain medication was not helping, he "need[ed] to go through sick call and inform the nurses." (Id. at 13).

On May 23, 2011, Plaintiff also wrote a letter to Defendant, Warden Patterson, complaining that he needed surgery for his hernia. (Id. at 8). Warden Patterson responded that he could not prescribe medical treatment for Plaintiff, and he advised Plaintiff to continue to seek medical attention from the medical staff for his hernia issues "as they arise." (Id. at 9). In addition, a member of Plaintiff's family sent an undated letter to Defendant, Commissioner Thomas, referencing information sent to Defendants Naglich and Patterson, informing Defendants that Plaintiff needed surgery for his hernia condition. (Id. at 17).

From May through September, 2011, Plaintiff complained of pain and difficulty walking associated with his hernia, and he continued to receive additional pain medication, hernia supports, and "no prolonged standing" profiles. (Doc. 20, att. 2 at 1-3, 48-49; Doc. 20, att. 7 at 65-66). On September 20, 2011, Dr. Barber noted that Plaintiff was complaining of a great deal of pain and "an enlarging [right] hernia and wants to have it fix[ed] even though it isn't incarcerated." (Doc. 20, att. 2 at 18).

Nine days later, on September 29, 2011, Plaintiff complained that he needed to see the doctor because his hernia had "dropped into [his] sack," causing "real bad pain." (Doc. 20, att. 2

3

at 31).  Four days later, on October 3, 2011, Dr. Barber saw Plaintiff and promptly requested approval from Defendant Corizon for a surgical referral for Plaintiff with an off-site physician, Dr. Grover T. Paul, based on her finding that Plaintiff had a "large partial incarcerated [right] hernia" that was "nonreducible."  (Doc. 27, att. 2 at 28).  That request was approved by Corizon on October 22, 2011, and Plaintiff was taken to see Dr. Paul on November 3, 2011.  (Doc. 27, att. 2 at 24-25).  After examining Plaintiff, Dr. Paul scheduled Plaintiff's surgery for December 5, 2011, at which time the hernia was successfully repaired.  (Doc. 27, att. 2 at 19-24).

Dr. Barber's notes from December 26, 2011, reflect that Plaintiff saw Dr. Paul for a follow up visit, that he was "healing well," and that there were "no complaints."  (Doc. 27, att. 1 at 20).  Plaintiff's medical records show that he subsequently complained of persistent right inguinal pain, and, on January 30, 2012, he was taken back to Dr. Paul for another follow-up visit.  (Doc. 27, att. 2 at 9-10).  Dr. Paul prescribed no further treatment for the hernia.  (Id.).  Plaintiff continues to be monitored by Dr. Barber.  (Id.).

## II.  PROCEDURAL ASPECTS OF THE CASE

On July 8, 2011, Plaintiff filed the present § 1983 Complaint in this Court.  (Doc. 1).  On July 22, 2011, Plaintiff filed his first amended complaint.  (Doc. 5).  On August 31, 2011, Plaintiff sought leave to file a second amended complaint, which this Court granted on September 26, 2011.  (Docs. 7, 8, 9).  In his second amended complaint, Plaintiff seeks damages[3] and injunctive relief against Defendants for delay in providing medical treatment for a hernia, thereby

---

3 In his second amended complaint, Plaintiff requests only declaratory relief and such other relief as this Court deems just and proper.  (Doc. 8 at 4).  However, in his response to Defendants' Answers and Special Reports, Plaintiff implies that he is seeking "monetary compensation" as well.  (Doc. 23 at 4).  Having found no constitutional violation in this case, it is unnecessary to address whether Plaintiff has properly raised a claim for money damages in this action.

violating his Eighth Amendment right against cruel and unusual punishment.  (Doc. 8 at 4; Doc. 23 at 4).

In the Answers and Special Reports filed on behalf of Defendants on October 31, 2011, November 4, 2011, and November 28, 2011, Defendants deny Plaintiff's allegations and assert various defenses, including absolute and qualified immunity.[4]  (Docs. 13, 20, 21, 22).  On November 30, 2011, Plaintiff filed a response in opposition to Defendants' Answers and Special Reports.  (Doc. 23).  On December 1, 2011, the Court converted the Answer and Special Report of the ADOC Defendants to a motion for summary judgment.[5]  (Doc. 24).  On February 3, 2012,

---

[4] In his complaint, Plaintiff states that he is suing Defendants in their official and individual capacities.  As state officers, Defendants Thomas, Naglich, Patterson, and James are absolutely immune from suit for damages in their official capacities.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  However, having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled in part by* Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565.
   The Court also notes that, as private actors, the medical Defendants, Corizon, Barber, Hicks, and Myers are not entitled to immunity, whether qualified or absolute.  See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the County to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."); Hinson v. Edmond, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician" "is ineligible to advance the defense of qualified immunity"); Edwards v. Alabama Dep't of Corrections, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a private entity contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity....").  Similarly, the Court is aware of no case extending absolute immunity to private actors providing medical services to state inmates.

5 Although the Answer and Special Report of the medical Defendants were not included in the Court's Order that converted the ADOC Defendants' Answer and Special Report to a motion for summary judgment, Plaintiff nevertheless responded to the Answers and Special Reports of *all* of the Defendants in his "Response to Defendants Special Report."  (Doc. 23).  Considering that

the Court ordered Defendants to supplement their submissions by filing a complete set of Plaintiff's medical records. (Doc. 26). On February 7, 2012, Defendants filed their supplemental submission. (Doc. 27). The Defendants' motions for summary judgment and Plaintiff's response thereto are now before the Court.

### III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms.,

---

Plaintiff asserts the same delay of medical care claim against all of the Defendants, that Plaintiff has responded to the Answers and Special Reports of all of the Defendants, and that Plaintiff was given from December 1, 2011, to January 4, 2012, to submit anything that he wanted in opposition to the ADOC Defendants' motion for summary judgment and filed nothing further, the Court will treat the Answer and Special Report of the medical Defendants as a motion for summary judgment as well. In addition, Plaintiff will be afforded fourteen days to object to this Report and Recommendation, which is the same amount of time required under Federal Rule of Civil Procedure 56 for notice to the non-movant before conducting a hearing on a motion for summary judgment. Therefore, for each of these reasons, the Court finds this procedure appropriate and adequate to satisfy the notice requirement of Rule 56 with respect to the motion for summary judgment of the medical Defendants.

372 F.3d 1250, 1280 (11th Cir. 2004).

> Federal Rule of Civil Procedure 56(e) further provides:
>
> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Florida Van Lines, Inc., 2012 WL 32660, *5 (S.D. Ala. 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  AGSouth Genetics, LLC v. Cunningham, 2011 WL 1833016, *2 (S.D. Ala. 2011).

## IV. DISCUSSION

As set forth above, Plaintiff alleges in his Complaint that Defendants violated his rights under the Eighth Amendment by delaying medical treatment for a hernia that he developed on or about May 9, 2011, while he was incarcerated at Holman Correctional Facility.  Specifically, Plaintiff alleges that he complained to Defendants about symptoms that he was experiencing with a hernia on May 9, 2011, but he did not receive surgery to repair the hernia until December 5, 2011.  (Doc. 27, att. 2 at 19-24).  Plaintiff argues that he should have had surgery sooner and that Defendants' seven-month delay in securing that procedure constitutes a violation of his rights under the Eighth Amendment.  For each of the reasons set forth below, Plaintiff's claim fails as a matter of law.

      I.      Eighth Amendment Delay of Medical Care Claim.

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs."  Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id.   (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. Farrow, 320 F.3d at 1243.  "Deliberate indifference" entails more than mere negligence.  Estelle, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at

9

> 837, 114 S. Ct. 1970 (emphasis added). In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46 (emphasis in original).

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." <u>Hill</u>, 40 F.3d at 1187 (internal citations and quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." <u>Id.</u>

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. <u>Gaudreault</u>, 923 F.2d at 208; <u>Monmouth County</u>, 834 F.2d at 347. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." <u>Id.</u> An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." <u>Harris v. Coweta County</u>, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

<u>Hill</u>, 40 F.3d at 1188-89 (emphasis in original) (footnotes omitted).

The Court assumes, for purposes of the motions for summary judgment, that Plaintiff's

hernia constitutes an objectively serious medical need. Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendants were deliberately indifferent to Plaintiff's serious medical need.

The undisputed evidence in this case shows that, when Plaintiff filled out a health services request form on May 9, 2011, requesting medical attention for the first time for a hernia, he was seen in sick call that same day by a nurse in the health care unit who scheduled an appointment for him with the prison physician for May 20, 2011. (Doc. 20, att. 2 at 50-52). Even before his scheduled appointment with the doctor, Plaintiff was given a hernia guard to wear. (Doc. 20, att. 7 at 67). At his appointment on May 20, 2011, Defendant, Dr. Barber, diagnosed Plaintiff with a small, reducible inguinal hernia and placed him on a conservative treatment plan of analgesics and a truss. (Doc. 20, att. 8 at 2; Doc. 20, att. 2 at 19). Dr. Barber then closely monitored Plaintiff for signs of non-reducibility, strangulation, or dissection into the scrotum. (Id.).

Over the next several months, Plaintiff complained of pain that was sometimes severe, and Dr. Barber continued to prescribe additional analgesics, a "no prolonged standing" profile, and hernia supports. (Doc. 8; Doc. 20, att. 8 at 2; Doc. 20, att. 1 at 3). On September 29, 2011, Plaintiff complained to a nurse in the health care unit that his hernia had "dropped into [his] sack." (Doc. 20, att. 2 at 29, 31). Four days later, on October 3, 2011, Dr. Barber examined Plaintiff and promptly requested approval from Defendant Corizon for a surgical referral with Dr. Paul, an off-site surgeon, based on her finding that Plaintiff had a "large partial incarcerated [right] hernia." (Doc. 27, att. 2 at 28). Corizon approved the request on October 22, 2011, and Plaintiff was taken to see Dr. Paul on November 3, 2011. (Doc. 27, att. 2 at 24-25). Dr. Paul scheduled surgery for December 5, 2011, and successfully repaired the hernia on that date. (Doc. 27, att. 2 at 19-24).

In this case, Plaintiff does not dispute that he received immediate, continuous, and

extensive medical treatment from the first day that he complained about his hernia. However, he complains that he should not have had to wait seven months for surgery and that the seven-month delay constitutes deliberate indifference to his serious medical need. The Court disagrees.

In a similar case, Jackson v. Jackson, 2012 WL 265585, *2 (11th Cir. 2012) (unpublished),[6] the Eleventh Circuit recently stated:

> To show deliberate indifference to a serious medical need, a plaintiff must demonstrate three components: (1) the defendant's subjective knowledge of the risk of serious harm; (2) the defendant's disregard of that risk; and (3) that the defendant's conduct rose to more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). A medical need may be considered serious if a delay in treating it makes it worse. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2010). For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).
>
> We conclude that the district court properly granted summary judgment to Defendants. Evidence showed that Jackson received treatment for his hernia symptoms, including receiving pain medication and a hernia truss. That Jackson failed to comply with his prescribed course of treatment by not wearing the truss is also evident. Dr. Harden met with Jackson at least three times and determined that Jackson's hernia was non-strangulated and posed no risk. Because it is common medical practice to postpone surgery until a hernia becomes strangulated, Dr. Harden considered Jackson's surgery elective and submitted a request for elective surgery to the prison's Utilization Committee. Jackson's request was approved, and he received hernia surgery about six months after his initial complaint to prison staff. When his surgery was performed, Jackson's hernia remained non-strangulated.
>
> The care Jackson received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." See Harris, 941 F.2d at 1505. The delay in receiving surgery was because the hernia remained treatable without surgery and posed no

---

6 "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

> risk to Jackson's health.  Moreover, the delay did not worsen Jackson's condition.  See Mann, 588 F.3d at 1307.  That Jackson felt he should have had surgery earlier than he did is insufficient to support a deliberate indifference claim.  See Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); Harris, 941 F.2d at 1505 (explaining that a difference in medical opinion between the prison's medical staff and the inmate about the inmate's course of treatment will not support a claim of cruel and unusual punishment).
>     Construing the facts in the light most favorable to Jackson, the record does not demonstrate that Defendants' conduct amounted to a constitutional violation.  The district court correctly granted summary judgment to Defendants.

Id.

In the present case, Plaintiff's hernia did not become "incarcerated," thereby necessitating medical treatment, until September 29, 2011.  (Doc. 20, att. 2 at 29-31; Doc. 27, att. 2 at 28).  At that time, Dr. Barber promptly submitted a request for a surgical referral, which was approved by Defendant Corizon on October 22, 2011.[7]  (Doc. 27, att. 2 at 25; Doc. 20, att. 8 at 3).  Plaintiff was taken to a private surgeon, Dr. Paul, on November 3, 2011, and Dr. Paul scheduled Plaintiff's surgery for December 5, 2011.  (Doc. 27, att. 2 at 23-24).

While Plaintiff undisputedly experienced pain associated with his hernia and while that pain was sometimes severe, he was continuously prescribed pain medication, hernia guards, and given "no prolonged standing" profiles.  Even considering his complaints of pain, there is no indication from the record that Dr. Paul, Dr. Barber, or any other medical professional considered

---

7 The date referenced by Dr. Barber as the date that surgical intervention became medically necessary is October 10, 2011.  (Doc. 20, att. 8 at 3).  However, Plaintiff reported his "incarcerated" hernia on September 29, 2011.  (Doc. 20, att. 2 at 31).  Therefore, for purposes of the motions for summary judgment, the Court will use that date as the date that surgery became medically necessary.

his hernia condition to require surgical intervention prior to the date that it became "incarcerated" on September 29, 2011.

Moreover, there is no indication that Dr. Paul, Dr. Barber, or any other medical professional at any time considered Plaintiff's hernia condition to be urgent or life-threatening, even after the hernia became "incarcerated." To the contrary, the evidence is undisputed that Plaintiff's condition was never life-threatening. (Doc. 20, att. 8 at 3).

The record shows that, at all times, Plaintiff was closely followed by the medical staff at Holman and promptly treated for his complaints. There is no evidence that Defendants ever knew of an excessive risk to Plaintiff's health and disregarded it, nor is there "verifying medical evidence" that any delay in surgical intervention, whether before or after the hernia became "incarcerated," detrimentally exacerbated Plaintiff's condition.[8] Hill, 40 F.3d at 1188-89.

"When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). Considering all of the circumstances surrounding the medical treatment that Plaintiff received related to his hernia from the first day that he complained to the medical staff at Holman on May 9, 2011, to the present date, the Court cannot say that any of the Defendants were deliberately indifferent to his serious medical needs. Thus, Plaintiff has failed to establish the subjective element of his Eighth Amendment claim, and Defendants are entitled to summary judgment.

---

8 To the extent that Plaintiff is arguing that the two-month delay between the date that his hernia became incarcerated and the date that his surgery was scheduled violated his constitutional rights, such an argument would be unavailing. Reasonable delays associated with scheduling a non-life-threatening procedure do no support an Eighth Amendment denial of medical care claim. See Jackson v. Benjamin, 2011 WL 1789992, *6 (S.D. Ala. 2011) (quoting Moore v. Ferrell, 2009 WL 1579534, *7 (S.D. Ala. 2009) ("It is a reality of prison life that appointments with physicians or for diagnostic testing for treatment of non-life-threatening medical conditions must be scheduled[,] [and] [i]t is reasonable to expect some delay while arrangements are being made.").

II.     *Respondeat Superior* Claim Against Defendant Myers.

In this case, Plaintiff's allegations against Defendant Donny Myers, the Corizon Health Services Administrator, are premised solely on a theory of *respondeat superior*. Plaintiff alleges in his complaint only that Defendant Myers is liable in this action because he "is responsible for the care and conditions of care at Holman prison." (Doc. 8 at 1).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."   Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted).

> Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Gonzalez, 325 F.3d at __, 2003 WL 1481583, at *5; Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).   The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Gonzalez, 325 F.3d at__, 2003 WL 1481583, at *5 (quoting Braddy v. Fla. Dept. of Labor & Employment, 133 F.3d 797, 802 (11th Cir. 1998)); Brown, 906 F.2d at 671.   Alternatively, the causal connection may be established when a supervisor's "'custom or policy . . . result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."   Gonzalez, 325 F.3d at __, 2003 WL 1481583, at *5 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)); Hartley, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993).   "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."   Gonzalez, 325 F.3d at __, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

Cottone, 326 F.3d 1352, 1360-61.

Plaintiff's second amended complaint makes no allegations against Defendant Myers

concerning any personal participation by or causal connection between Myers or his policies and the alleged constitutional deprivation in this case. Therefore, Plaintiff's claim against this Defendant fails as a matter of law.

## V.   CONCLUSION

Based on the foregoing, it is recommended that the motions for summary judgment of Defendants, Corizon, Barber, Hicks, Myers, Thomas, Naglich, Patterson, and Powers (Docs. 13, 20, 21, 22, 27) be granted and that Plaintiff's action against these Defendants be dismissed with prejudice. In addition, it is recommended that Plaintiff's pending motion for a temporary restraining order or preliminary injunction be denied as moot. (Doc. 4).

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 16th day of February, 2012.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   <u>Fed. R. Civ. P.</u> 72(b)(2).